UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                             :
    In re                             :    Chapter 11
                                             :
RCN CORPORATION, et al.,                     :    Case No. 04-13638 (RDD)
                                             :
                  Debtors.          :    (Jointly Administered)
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - -x


**FINDINGS OF FACT AND CONCLUSIONS OF LAW
RELATING TO AND ORDER UNDER 11 U.S.C. § 1129(a)
AND (b) AND FED. R. BANKR. P. 3020 CONFIRMING THE
JOINT PLAN OF REORGANIZATION OF RCN CORPORATION
AND CERTAIN SUBSIDIARIES**


<u>RECITALS</u>

        A. RCN Corporation ("RCN") and certain of its direct and indirect

subsidiaries, debtors and debtors-in-possession in the above-captioned cases (collec-

tively, the "Debtors"), filed voluntary petitions in this Court for reorganization relief

under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy

Code"). Specifically, RCN, TEC Air, Inc., RLH Property Corporation, RCN

Finance, LLC and Hot Spots Productions, Inc. commenced their chapter 11 cases on

May 27, 2004. RCN Cable TV of Chicago, Inc. commenced its chapter 11 case on

August 5, 2004, and RCN Telecom Services of Virginia, Inc., RCN Entertainment,

Inc., 21st Century Telecom Services, Inc. and ON TV, Inc. commenced their chapter

11 cases on August 20, 2004.

       B.  On October 12, 2004, the Debtors and the official committee of

unsecured creditors (the "Creditors' Committee") filed the Joint Plan of Reorganiza-

tion of RCN Corporation and Certain Subsidiaries (as subsequently amended,

modified, or supplemented, the "Plan") and a related disclosure statement (the

"Disclosure Statement") (Docket No. 293).[1]

       C.  On October 13, 2004, this Court entered an order approving the

Disclosure Statement as containing adequate information within the meaning of

section 1125(a) of the Bankruptcy Code (Docket No. 296).

       D.  Following the hearing to approve the Disclosure Statement held

on October 12, 2004, the Court entered an order, among other things, (i) establishing

solicitation, voting, and tabulation procedures and deadlines, (ii) scheduling the

hearing to consider confirmation of the Plan, and (iii) approving the form and

manner of notice of the deadline for, and establishing deadlines and procedures for

---

[1]     Unless otherwise defined, capitalized terms used in this order (the "Order") shall have the meanings ascribed to them in the Plan.  In addition, in accordance with Article I.A of the Plan, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

2

the filing and service of, objections to confirmation of the Plan (the "Solicitation

Procedures Order") (Docket No. 297).

        E.  A confirmation hearing notice, the Disclosure Statement, the Plan,

the Solicitation Procedures Order, and the appropriate ballots (or, in the case of non-

voting Classes, the appropriate notice of non-voting status) (collectively, the "Solici-

tation Package") were transmitted to all holders of Claims and Interests and other

parties-in-interest in accordance with Fed. R. Bankr. P. 3017(d) and the Solicitation

Procedures Order, as set forth in the certification of Jane Sullivan (the "Sullivan

Solicitation Certification"), a Director of Financial Balloting Group LLC ("FBG"),

the Debtors' solicitation agent (Docket No. 362).

        F.  On October 15, 2004, a confirmation hearing notice was published

in The Wall Street Journal, as set forth in the affidavit of publication of Mike Herley,

the advertising clerk of The Wall Street Journal, (the "Publication Affidavit").

(Docket No. 417).

        G.  The Debtors filed with the Court the Plan Supplement, dated

November 19, 2004, containing certain documents and other information related to

the Plan, as specified in the Plan (Docket No. 408).

        H.  On December 3, 2004, the Debtors filed the declaration of Jane

Sullivan (the "Sullivan Tabulation Declaration"), certifying the results of the ballot

and master ballot tabulation for the Classes of Claims and Interests voting to accept or reject the Plan.  (Docket No. 463).

I.  On December 6, 2004, the Debtors filed the declaration of John Dubel (the "Dubel Declaration") (Docket No. 468), and on December 6, 2004, the Debtors filed the declaration of Timothy Coleman (the "Coleman Declaration") (Docket No. 469), each in support of confirmation of the Plan (collectively, the "Supporting Declarations").

J.  On December 6, 2004, the Debtors filed their Memorandum In Support Of Confirmation Of The Joint Plan of Reorganization Of RCN Corporation And Certain Subsidiaries (the "Confirmation Memorandum") (Docket No. 467).

K.  Pursuant to section 1128(a) of the Bankruptcy Code, the Court held a hearing on December 8, 2004 (the "Confirmation Hearing") to consider confirmation of the Plan.

L.  The objections to confirmation of the Plan filed by: (i) Debra K. Craig on Behalf of the RCN Savings and Stock Ownership Plan and its Participants and Beneficiaries (Docket No. 431), (ii) E! Entertainment (Docket No. 434), (iii) Scripps Networks, Inc. (Docket No. 436), (iv) Edward T. Joyce (Docket No. 438), (v) Merrill Lynch Trust Company FSB (Docket No. 440), and (vi) National Cable Television Cooperative (Docket No. 445) have been withdrawn or resolved as stated on the record at the Confirmation Hearing.

4

NOW, THEREFORE, based upon the Court's review of, among other things, the Plan, the Plan Supplement, the Disclosure Statement, the Solicitation Procedures Order, the Sullivan Solicitation Certification, the Publication Affidavit, the Sullivan Tabulation Declaration, the Supporting Declarations, the Confirmation Memorandum, all of the evidence proffered or adduced at, the objections filed in connection with, and the arguments of counsel made at, the Confirmation Hearing; and upon the record of the Disclosure Statement Hearing, Confirmation Hearing and all prior proceedings in these Chapter 11 Cases; and after due deliberation thereon; and good cause appearing therefor:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT[2]

1. <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>. This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. <u>See</u> Fed. R. Bankr. P. 7052.

complies with the applicable provisions of the Bankruptcy Code and should be
confirmed.

2. <u>Judicial Notice</u>.  This Court takes judicial notice of the docket of
the Debtors' Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-
appointed agent, including, without limitation, all pleadings and other documents
filed, all orders entered, and evidence and argument made, proffered or adduced at,
the hearings held before the Court during the pendency of the Chapter 11 Cases.

3. <u>Outline Of Plan</u>.  In addition to Administrative Claims and
Priority Tax Claims, which need not be designated, the Plan designates ten Classes
of Claims and Interests.  Under the Plan:

- Holders of Other Priority Claims (Class 1), Bank Claims (Class 2), Other Secured Claims (Class 4), and Subsidiary General Unsecured Claims (Class 6) are Unimpaired, and thus are deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code;

- Holders of Equity Interests (Class 8), Subordinated Claims (Class 9) and Warrants Interests (Class 10) are Impaired and are not entitled to receive any distribution under the Plan on account of their Claims or Interests, and thus are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code;

- Holders of Evergreen Claims (Class 3) and RCN General Unsecured Claims (Class 5) are Impaired and will receive distributions under the Plan, and thus had the right to vote to accept or reject the Plan.  Holders of Preferred Interests (Class 7) are Impaired and are not entitled to receive any property or interests on account of such Interests.  Holders of Preferred Interests that voted to accept the Plan, however, are entitled to

6

receive their Pro Rata share of New Warrants if holders of
RCN General Unsecured Claims voted to accept the Plan.
Holders of Preferred Interests, therefore, were allowed to vote
to accept or reject the Plan.

4. Transmittal And Mailing Of Materials; Notice.  The Solicitation
Package was transmitted and served upon all interested parties in substantial compli-
ance with the Solicitation Procedures Order and in compliance with the Bankruptcy
Rules, and such transmittal and service were adequate and sufficient.  Notice of the
Confirmation Hearing and all deadlines in the Solicitation Procedures Order was
given in compliance with the Bankruptcy Rules and the Solicitation Procedures
Order and was good and sufficient in accordance with Fed. R. Bankr. P. 2002(b) and
3020(b)(2), and no other or further notice is required.

5. Receipt And Tabulation Of Votes.  The procedures employed by
FBG to receive and tabulate Ballots from the holders of Claims or Interests in the
voting Classes, as set forth in the Sullivan Tabulation Declaration, were proper and
appropriate and in compliance with the Solicitation Procedures Order.  As described
in the Sullivan Tabulation Declaration:

- 100% in amount and 100% in number of the Allowed Claims
  in Class 3 (Evergreen Claims) that voted on the Plan, accepted
  the Plan.  Class 3 accepted the Plan;

- 99.98% in amount and 99.72% in number of the Allowed
  Claims in Class 5 (RCN General Unsecured Claims) that
  voted on the Plan, accepted the Plan.  Class 5 accepted the
  Plan; and

7

- 100% in number of the Allowed Interests in Class 7 (Preferred Interests) that voted on the Plan, accepted the Plan.  Class 7 accepted the Plan.

The Plan was accepted by the three Impaired Classes entitled or authorized to vote.

The Debtors therefore obtained the requisite acceptances both in number and amount

for confirmation of the Plan.

6. Plan Compliance With Bankruptcy Code (11 U.S.C. §

1129(a)(1)).  The Plan complies with the applicable provisions of the Bankruptcy

Code and the Bankruptcy Rules, thereby satisfying 11 U.S.C. § 1129(a)(1).

(i)  Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  In addition to Administrative Claims and Priority Tax Claims, which need not be designated, the Plan designates ten Classes of Claims and Interests.  The Claims and Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class, and such classification is therefore consistent with section 1122 of the Bankruptcy Code.  Valid factual and legal reasons exist for the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between or among holders of Claims or Interests.  Specifically, valid factual and legal reasons exist for the separate classification of Claims in Classes 1, 2, 3, 4, 5, 6 and 9 and for the separate classification of Interests in Classes 7, 8 and 10.  The Plan thus satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)  Specification Of Unimpaired Classes (11 U.S.C. §1123(a)(2)).  The Plan specifies that Classes 1, 2, 4 and 6 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)  Specified Treatment Of Impaired Classes (11 U.S.C. §1123(a)(3)).  Article III.C of the Plan specifies the treatment

8

of Impaired Classes 3, 5, 7, 8, 9 and 10, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv)   No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)   Implementation Of The Plan (11 U.S.C. § 1123(a)(5)). Article IV of the Plan provides adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.  Among other things, Article IV includes provisions relating to (i) entry by Reorganized RCN into the Exit Facility, (ii) the continued corporate existence of each of the Debtors, (iii) the execution and delivery of the corporate documents that will govern the Debtors, including, but not limited to, the Reorganized RCN Certificate of Incorporation and By-Laws, (iv) the cancellation of the Existing Securities and related agreements, (v) the authorization and issuance of (a) New Common Stock, (b) New Warrants and (c) the Convertible Second-Lien Notes, (vi) entry into the Convertible Second-Lien Notes Registration Rights Agreement and the New Common Stock Registration Rights Agreement (together, the "Registration Rights Agreements"), (vii) the revesting in the Reorganized Debtors, on the Effective Date, of the property of the Debtors' Estates not disposed of under the Plan, and (viii) the selection of the initial directors and officers for Reorganized RCN and each of the other Debtors.  Other Articles of the Plan also set forth adequate means for the implementation of the Plan:  Article V includes provisions regarding distributions under the Plan; Article VI provides the procedures for resolving disputed, contingent, and unliquidated Claims; Article IX includes provisions regarding securities to be issued in connection with the Plan; Article XII provides for the retention of jurisdiction by the Court over certain unresolved matters; and Article XIV provides for, among other things, the discharge of, and certain releases by and of, the Debtors and other parties-in-interest.  Further, the Debtors will have sufficient Cash to make all payments required to be made on the Effective Date pursuant to the terms of the Plan.

(vi)   <u>Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.  Pursuant to Article IV.B.1 of the Plan, and subject to such future amendment as is permitted by applicable law, the Reorganized RCN Certificate of Incorporation and By-laws filed with the Court as part of the Debtors' Plan Supplement prohibits the issuance of nonvoting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(vii)   <u>Selection Of Officers And Directors (11 U.S.C. §1123(a)(7))</u>.  The provisions of the Plan and the Reorganized RCN Certificate of Incorporation and By-laws regarding the manner of selection of officers and directors of the Debtors are consistent with the interests of Claim and Interest holders and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code. Specifically, Article IV.E of the Plan provides that the initial board of directors of Reorganized RCN will consist of seven members, as selected by the Creditors' Committee; *provided, however*, D.E. Shaw Laminar Lending 2, Inc. ("Laminar") will have the right, but not the obligation, to nominate one qualified candidate for election as a director of Reorganized RCN so long as Laminar holds at least $25 million principal amount of outstanding Convertible Second-Lien Notes.   The Creditors' Committee and Laminar identified, prior to the Confirmation Hearing, the members of the initial board of directors of Reorganized RCN.  The members of the initial board of directors will serve until the expiration of their terms or their earlier resignation or removal in accordance with the Reorganized RCN Certificate of Incorporation and By-laws, as each may be amended from time to time.

(viii)   <u>Impairment Of Classes (11 U.S.C. § 1123(b)(1))</u>.  In accordance with section 1123(b)(1) of the Bankruptcy Code, Articles II and III of the Plan impair and leave Unimpaired, as the case may be, each Class of Claims and Interests under the Plan.

(ix)   <u>Assumption Of Executory Contracts And Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>.  In accordance with section 1123(b)(2) of the Bankruptcy Code, Article VII.A of the Plan provides that, except as otherwise provided therein or in any contract, instrument, release, indenture, or other agreement or document

10

entered into in connection with the Plan, as of the Effective Date, each of the Debtors will be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) was listed on the schedule of contracts to be assumed attached as Exhibit D to the Plan, or (iv) was the subject of a motion to assume filed on or before the deadline for voting to accept or reject the Plan.  The Debtors' decision regarding the assumption or rejection of their executory contracts is based on, and is within, the sound business judgment of the Debtors, and is in the best interests of the Debtors, their Estates, and their Claim and Interest holders.

     (x)   Retention, Enforcement, And Settlement Of Claims Held By The Debtors (11 U.S.C. § 1123(b)(3)).  Pursuant to section 1123(b)(3) of the Bankruptcy Code, Article IV.G of the Plan provides that, except as otherwise provided in the Plan or this Order, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, the Reorganized Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) any or all claims, right or causes of action, suits, and proceedings, whether in law or equity, whether known or unknown, that the Debtors or their Estates may hold against any Person or entity.  The Reorganized Debtors or their successor(s) may pursue such retained claims, rights or causes of action, suits, or other proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their successor(s) who hold such rights.

     (xi)   Other Provisions Not Inconsistent With Title 11 (11 U.S.C. § 1123(b)(6)).  In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with the applicable provisions of the Bankruptcy Code.

    7.   Identification Of Plan Proponents (Fed. R. Bankr. P. 3016(a)).  As required by Fed. R. Bankr. P. 3016(a), the Plan is dated and identifies the Plan proponents.

8.    Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

The Debtors and Creditors' Committee have complied with the applicable provisions

of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy

Code.   Specifically:

> (i)    Each of the Debtors filed a Chapter 11 petition pursuant to section 301 of the Bankruptcy Code.   Each of the Debtors is a proper debtor under section 109 of the Bankruptcy Code.

> (ii)    The Debtors and the Creditors' Committee are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

> (iii)    The Debtors complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order in transmitting the Solicitation Package and related documents and notices, and in soliciting and tabulating votes on the Plan.

> (iv)    The Debtors, the Creditors' Committee and its members in their capacity as such, and each of their respective affiliates, agents, directors, officers, employees, investment bankers, financial advisors, attorneys, and other professionals have participated in "good faith" and in compliance with all applicable provisions of the Bankruptcy Code.

> (v)    The Debtors have acted in accordance with all orders of the Court entered during these Chapter 11 Cases.

9.    Plan Proposed In Good Faith (11 U.S.C. § 1129(a)(3)).   The

Debtors and the Creditors' Committee have proposed the Plan in good faith and not

by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bank-

ruptcy Code.   The Court has examined the totality of the circumstances surrounding

the formulation of the Plan.   Based on the evidence proffered or adduced at or prior

12

to, or in declarations filed in connection with, the Confirmation Hearing, the Plan has been proposed with the legitimate and honest purpose of reorganizing the business affairs of the Debtors and maximizing the returns available to Claim and Interest holders.  Consistent with the overriding purpose of Chapter 11 of the Bankruptcy Code, the Plan is designed to allow the Debtors to reorganize by providing the Reorganized Debtors with capital structures that will allow them sufficient liquidity and capital resources to satisfy their obligations, to fund necessary capital expenditures, and to otherwise conduct their businesses.  Further, the Plan itself and the arms' length negotiations among the Debtors, the Creditors' Committee, and the Debtors' other constituencies, and their respective legal and financial advisors, leading to the Plan's formulation, as well as the overwhelming support of holders of Claims and Interests entitled or authorized to vote, provide independent evidence of the Debtors' and the Creditors' Committee's good faith in proposing the Plan.

   10. <u>Payments For Services Or Costs And Expenses (11 U.S.C. § 1129(a)(4))</u>.  Any payment made or to be made by the Debtors, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.  For example, all fees and expenses incurred by Professionals

appointed in the Chapter 11 Cases will be subject to the Court's final approval

following the filing of final fee applications.

      11.   <u>Directors, Officers, And Insiders (11 U.S.C. § 1129(a)(5))</u>.  The

Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  Specifi-

cally:

      (i)   The Debtors have disclosed the identity and
affiliations of the individuals proposed to serve, after confirmation of
the Plan, as directors or officers of Reorganized RCN.  The
appointment or continuance of the proposed directors and officers is
consistent with the interests of holders of Claims and Interests and
public policy.

      (ii)   The Debtors have disclosed the identity of
any insiders who will be employed or retained by Reorganized RCN,
and the nature of such persons' compensation.

      12.   <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  The Debtors' Plan

does not provide for any rate change that requires regulatory approval.  Thus,

Bankruptcy Code section 1129(a)(6) is not applicable to these Chapter 11 Cases.

      13.   <u>Best Interests Of Creditors Test (11 U.S.C. § 1129(a)(7))</u>.  The

Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  Specifically:

      (i)   The Liquidation Analysis annexed to the
Disclosure Statement as Exhibit C and the other evidence related
thereto that was proffered or adduced at or prior to, or in declarations
filed in connection with, the Confirmation Hearing have not been
controverted by other evidence.  The methodology used and
assumptions made in the Liquidation Analysis, as supplemented by
the evidence proffered or adduced at or prior to, or in declarations
filed in connection with, the Confirmation Hearing, are reasonable.

14

(ii)    Each holder of a Claim or Interest in each Impaired Class either has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.  No Class has made an election under section 1111(b)(2) of the Bankruptcy Code.

14.    Acceptance By Certain Classes (11 U.S.C. § 1129(a)(8)).

Classes 1, 2, 4, and 6 are Classes of Unimpaired Claims that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Classes 3, 5 and 7 are Classes of Claims or Interests that have voted to accept the Plan in accordance with the Plan and sections 1126(c) and (d) of the Bankruptcy Code.  Classes 8 through 10 are not entitled to receive or retain any property or interests under the Plan on account of their Claims or Interests and, accordingly, are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. The Debtors and the Creditors' Committee, as co-proponents of the Plan, have thus requested that the Court confirm the Plan notwithstanding that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been satisfied.

15.    Treatment Of Administrative And Priority Claims  (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Claims under Article II.A of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code, the treatment of Other Priority Claims under Article III.C.1 of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code, and the treatment of

15

Priority Tax Claims under Article II.B of the Plan satisfies the requirements of

section 1129(a)(9)(C) of the Bankruptcy Code.

      16.   Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(10)).  As

set forth in the Sullivan Tabulation Declaration and as reflected in the record of the

Confirmation Hearing, at least one Class of Claims or Interests that is Impaired

under the Plan has accepted the Plan, determined without including any acceptance

of the Plan by any insider of the Debtors holding a Claim or Interest in such Class,

thereby satisfying section 1129(a)(10) of the Bankruptcy Code.

      17.   Feasibility (11 U.S.C. § 1129(a)(11)).  Based upon the evidence

proffered or adduced at or prior to, or in declarations filed in connection with, the

Confirmation Hearing, confirmation of the Plan is not likely to be followed by the

liquidation or the need for further financial reorganization of the Reorganized

Debtors or any successor to the Reorganized Debtors, thereby satisfying section

1129(a)(11) of the Bankruptcy Code.

      18.   Payment Of Fees (11 U.S.C. § 1129(a)(12)).  All fees payable

under 28 U.S.C. § 1930 have been paid or will be paid as Administrative Claims on

or prior to the Effective Date pursuant to Article XIV.A.1 of the Plan, thereby

satisfying section 1129(a)(12) of the Bankruptcy Code.

      19.   Continuation of Retiree Benefits (11 U.S.C. § 1129 (a)(13).  The

Debtors maintain no retiree benefit plans.  Accordingly, section 1129(a)(13) of the

16

Bankruptcy Code, which requires, among other things, continuation of any such

benefits, is satisfied.

      20.  <u>No Unfair Discrimination; Fair And Equitable (11 U.S.C.</u>

<u>§ 1129(b))</u>.  The Plan may be confirmed notwithstanding the failure of the Plan to

satisfy section 1129(a)(8) of the Bankruptcy Code due to the deemed rejection of the

Plan by Classes 8, 9 and 10.

        (i)  The Plan is predicated on, among other
things, agreement to the terms of the Debtors' restructuring between
and among the Debtors, the Creditors' Committee and the holders of
RCN General Unsecured Claims (Class 5).  Holders of RCN General
Unsecured Claims are entitled to 100% of the value of  Reorganized
RCN.   Since holders of RCN General Unsecured Claims will not be
paid in full under the Plan, absent the willingness of the holders of
RCN General Unsecured Claims to make a voluntary allocation of
value to the holders of Preferred Interests (Class 7) and Equity
Interest (Class 8), the holders of Preferred Interests and Equity
Interests would not be entitled to, and would not receive, any
distribution from the Debtors under the Plan on account of their
Interests in the Debtors.  Nevertheless, by voting to accept the Plan,
the holders of RCN General Unsecured Claims have agreed to
provide to the holders of Preferred Interests (if such holders of
Preferred Interests vote in favor of the Plan) and Equity Interests, a
portion of the Debtors' and Reorganized Debtors' enterprise value
that the holders of RCN General Unsecured Claims otherwise would
be entitled to receive.

        (ii)  As a result of the foregoing, holders of Class
7 Preferred Interests and Class 8 Equity Interests will be receiving a
distribution under the Plan despite being of lesser priority than
holders of Class 5 RCN General Unsecured Claims and despite the
fact that the holders of Class 5 RCN General Unsecured Claims are
receiving less than 100% of their Allowed Claims.  Nevertheless, the
Plan does not unfairly discriminate against any other Class, including
Class 9 Subordinated Claims which will receive no distributions

17

under the Plan, and is "fair and equitable" with respect to all such Classes because, as described above, the distributions to Class 7 and Class 8 are based on the agreement of holders of RCN General Unsecured Claims to voluntarily allocate a portion of the value that they would otherwise receive to Class 7 and Class 8. The distribution to Class 7 and Class 8 is a permissible allocation of value by the holders of RCN General Unsecured Claims of a portion of the distribution to which they would otherwise be entitled.

(iii)   In addition, holders of Class 8 Equity Interests will be receiving a distribution under the Plan despite being of lesser priority than holders of Class 7 Preferred Interests. Nevertheless, the Plan does not unfairly discriminate against Class 7 and is "fair and equitable" with respect to such Class because, as described above, the distribution to Class 8 is based on the agreement of holders of RCN General Unsecured Claims to voluntarily allocate a portion of the value that they would otherwise receive to Class 8. The distribution to Class 8 is a permissible allocation of value by the holders of RCN General Unsecured Claims of a portion of the distribution to which they would otherwise be entitled.

(iv)   Classes 9 and 10 will receive no distributions under the Plan. The Subordinated Claims and Warrant Interests in these Classes, however, are the lowest priority in the Debtors' capital structure. The treatment of these Classes therefore complies with the absolute priority rule of section 1129(b) of the Bankruptcy Code.

21.   Principal Purpose Of Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e), and no governmental entity has filed any objection asserting such avoidance.

22.   Good Faith Solicitation; Good Faith Sale Of Securities (11 U.S.C. § 1125(e)). The Debtors, the Creditors' Committee, and its members in their capacity as such, and each of their respective affiliates, agents, directors, officers,

18

employees, investment bankers, financial advisors, attorneys, and other

professionals, through their participation in the negotiation and preparation of the

Plan and the Disclosure Statement and their efforts to confirm the Plan, have

solicited acceptances of the Plan in good faith and in compliance with applicable

provisions of the Bankruptcy Code.  The Debtors, the Creditors' Committee, and the

holders of Claims or Interests receiving any of the New Common Stock, New

Warrants, and Convertible Second-Lien Notes (collectively, the "New Securities")

and their respective agents, representatives, attorneys, and other advisors, have

participated in good faith and in compliance with the applicable provisions of the

Bankruptcy Code in the offer, sale, issuance, and purchase of the New Securities and

are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code

and the exculpation provisions set forth in Article XIV.I of the Plan.

      23.  <u>Objections</u>.  All objections to confirmation filed with the Court

have been withdrawn or settled as set forth on the Record of the Confirmation

Hearing, in the Plan and/or this Order.

      24.  <u>Exemption From Securities Laws and Registration and Related</u>

<u>Matters (11 U.S.C. § 1145(a))</u>.

          (i)  The issuance and distribution of the New
Securities have been duly authorized, and when issued as provided in
the Plan, will be validly issued, fully paid, and nonassessable.  The
offer and sale of the New Common Stock and New Warrants are in
exchange for Claims against or Interests in the Debtors, or principally
in such exchange and partly for cash or property, within the meaning

19

of section 1145(a)(1) of the Bankruptcy Code.  In addition, under section 1145 of the Bankruptcy Code, to the extent, if any, that the above-listed items constitute "securities," (a) the offering of such items is exempt, and the issuance and distribution of such items will be exempt, from Section 5 of the Securities Act and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities and (b) all of the above-described items will be freely tradeable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(11) of the Securities Act, and compliance with any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such securities or instruments, and (ii) the restrictions, if any, on the transferability set forth in such securities and instruments.

(ii)    Pursuant to Section 4(2) of the Securities Act, the issuance of the Convertible Second-Lien Notes will be exempt from registration under the Securities Act.  The distribution of the Convertible Second-Lien Notes pursuant to the Convertible Second-Lien Notes Documents (as defined below), complies with applicable law, including, but not limited to, the Trust Indenture Act.  15 U.S.C. §§ 77aaa, et al.

25.  Transfers Of Property.  The revesting, on the Effective Date, of all of the property of the Debtors' Estates in the Reorganized Debtors (a) is a legal, valid, and effective transfer of property, (b) vests the Reorganized Debtors with good title to such property free and clear of all Claims and Interests, except as expressly provided in the Plan or this Order, (c) does not constitute an avoidable transfer under the Bankruptcy Code or under applicable nonbankruptcy law, and (d) does not and shall not subject the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law.  No property of the Debtors' Estates is being, or should be deemed to be, abandoned pursuant to

20

section 554 of the Bankruptcy Code or otherwise.  The transfers of property to

holders of Claims and Interests under the Plan are for good consideration and value.

      26.   Injunctions; Releases.  (a) The Court has jurisdiction under

sections 1334(a) and (b) of title 28 of the United States Code to approve the injunc-

tions and releases set forth in Articles XIV.F,  XIV.G and XIV.H of the Plan.  In

addition, sections 105, 524, and 1141 of the Bankruptcy Code permit issuance of the

injunction and approval of the releases set forth in Articles XIV.F, XIV.G and XIV.

H of the Plan, as modified.  Such provisions are essential to the formulation and

implementation of the Plan and the restructuring of the RCN corporate group as

provided in section 1123(a)(5) of the Bankruptcy Code, confer material benefits on

the Debtors' Estates, and are in the best interests of the Debtors, their Estates, their

Claim and Interest holders, and the Reorganized Debtors.

      (b)  Based upon the record of these Chapter 11 Cases and the

evidence proffered or adduced at or prior to, or in declarations filed in connection

with, the Confirmation Hearing, the Court finds that the injunction and releases set

forth in Articles XIV.F, XIV.G and XIV.H of the Plan, as modified, which are

unopposed, are consistent with sections 105, 524, 1123, 1129, and 1141 of the

Bankruptcy Code.  The Court also finds and concludes that all parties released under

the Plan have provided valuable consideration to the Debtors' Estates in exchange

for such releases and would not have provided such consideration absent such releases.

27.    Modifications.  Prior to or at the Confirmation Hearing, in accordance with section 1127 of the Bankruptcy Code and Fed. R. Bankr. P. 3019, the Debtors proposed certain modifications to the Plan, as described in paragraph 45 below (collectively, the "Plan Modifications").  The Debtors' form and manner of notice of the Plan Modifications was good and sufficient under the particular circumstances and no other or further notice of the Plan Modifications is or shall be required.  The Plan Modifications do not (a) adversely affect the classification or treatment of holders of Claims and Interests, (b) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (c) cause the Plan to fail to satisfy the requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code, or (d) require the resolicitation of acceptances or rejections of the Plan from any party or require that any party be afforded an opportunity to change its previously cast acceptance or rejection of the Plan.

28.    No Liquidation.  The Plan does not provide for the liquidation of all or substantially all of the property of the Debtors.

29.    Condition To Confirmation.  The condition to Confirmation of the Plan set forth in Article X.A of the Plan has been satisfied before the Confirmation Date.

30.   <u>Retention Of Jurisdiction</u>.  The Court will retain jurisdiction over

the matters set forth in Article XII of the Plan.

31.   <u>Waiver Of Fed. R. Bankr. P. 3020(e)</u>.  The stay contemplated by

Fed. R. Bankr. P. 3020(e) shall not apply to this Order.

<u>DECREES</u>

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED,

AND DECREED THAT,

32.   <u>Confirmation</u>.  The Plan, a copy of which is annexed hereto as

Exhibit A, is hereby confirmed under section 1129 of the Bankruptcy Code and all

parties-in-interest are authorized and empowered, or enjoined, as the case may be, to

act in accordance with its terms.  All acceptances and rejections previously cast for

or against the Plan are hereby deemed to constitute acceptances or rejections of the

Plan as modified hereby.  The terms of the Plan and the exhibits thereto, including,

without limitation, the exhibits contained in the Plan Supplement (including any non-

material amendments, modifications, or supplements thereof at any time prior to the

Effective Date as may be agreed upon by the Debtors and the Creditors' Committee),

are incorporated by reference into and are an integral part of the Plan and this Order.

33.   <u>Objections</u>.  Each of the objections to Confirmation of the Plan

either has been withdrawn, waived, or settled.  To the extent, if any, that pleadings or

letters filed by individuals or entities constitute objections to Confirmation of the

Plan, they also have been withdrawn, waived, or settled.

      34.  <u>Provisions Of Plan And Confirmation Order Nonseverable And</u>

<u>Mutually Dependent</u>.  The provisions of the Plan and this Order, including the

findings of fact and conclusions of law set forth herein, are nonseverable and

mutually dependent.

      35.  <u>Good Faith Solicitation And Distribution</u>.  The Debtors, the

Creditors' Committee, and its members in their capacity as such, and each of their

respective affiliates, agents, directors, officers, employees, investment bankers,

financial advisors, attorneys and other professionals, have, and upon confirmation of

the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and

in compliance with the applicable provisions of the Bankruptcy Code.  In addition,

the Debtors, each member of the Creditors' Committee, and each of their respective

affiliates, agents, directors, officers, employees, investment bankers, financial

advisors, attorneys and other professionals, have, and upon confirmation of the Plan

shall be deemed to have, participated in good faith and in compliance with the

applicable provisions of the Bankruptcy Code with respect to the distribution of the

New Securities under the Plan, and, accordingly, are not, and on account of such

distributions shall not be, liable at any time for the violation of any applicable law,

rule, or regulation governing the solicitation of acceptances or rejections of the Plan

or such distributions made pursuant to the Plan.

36.   <u>Plan Classification Controlling</u>.  The classification of Claims and

Interests for purposes of the distributions to be made under the Plan is governed

solely by the terms of the Plan.  The classifications set forth on the Ballots tendered

to or returned by holders of Claims and Interest of the Debtors in connection with

voting on the Plan (a) were set forth thereon solely for purposes of voting on the

acceptance or rejection of the Plan and tabulation of such votes, (b) do not necessar-

ily represent, and in no event shall be deemed to modify or otherwise affect, the

actual classification of such Claims and Interests under the terms of the Plan for

distribution purposes, and (c) may not be relied upon by any holder of Claims or

Interests as actually representing the actual classification of such Claims and

Interests under the terms of the Plan for distribution purposes.

37.   <u>Executory Contracts</u>.  As of the Effective Date, all executory

contracts or unexpired leases assumed by the Debtors during these Chapter 11 Cases

or under the Plan shall be assigned and transferred to, and remain in full force and

effect for the benefit of, the Reorganized Debtors notwithstanding any provision in

such contract or lease (including those described in sections 365(b)(2) and (f) of the

Bankruptcy Code) that prohibits such assignment or transfer or that enables or

requires termination of such contract or lease.

25

38.    Binding Effect; Discharge.  (a) Pursuant to section 1141 of the

Bankruptcy Code, effective as of the Confirmation Date, but subject to the occur-

rence of the Effective Date, and except as expressly provided in the Plan or this

Order, the provisions of the Plan (including the exhibits to, and all documents and

agreements executed pursuant to, the Plan) and the Confirmation Order shall be

binding on (i) the Debtors, (ii) the Reorganized Debtors, (iii) all holders of Claims

against and Interests in any of the Debtors, whether or not Impaired under the Plan

and whether or not, if Impaired, such holders accepted, rejected, or are deemed to

have accepted or rejected the Plan, (iv) each Person acquiring property under the

Plan, (v) all non-Debtor parties to executory contracts and unexpired leases with any

of the Debtors, (vi) all entities that are parties to or are subject to the settlements,

compromises, releases, discharges, and injunctions described in the Plan or herein,

and (vii) each of the foregoing's respective heirs, successors, assigns, trustees,

executors, administrators, affiliates, officers, directors, agents, representatives, attor-

neys, beneficiaries, or guardians, if any (the Persons and entities described in clauses

(i) through (vii), collectively, the "Bound Parties").

(b)  Except as otherwise expressly provided in the Plan or this

Order and subject only to the occurrence of the Effective Date, the Debtors are

hereby discharged and released from all Claims against, liens on (including, without

limitation, all liens held by the holders of the Evergreen Claims) (collectively, the

26

"Liens"), and Interests in each of the Debtors, their assets, and their properties,

arising at any time before the entry of this Order, regardless of whether a proof of

Claim or proof of Interest therefor was filed, whether the Claim or Interest is

Allowed, or whether the holder thereof voted to accept the Plan or is entitled to

receive a distribution thereunder.  Subject to the occurrence of the Effective Date,

any holder of such a discharged Claim, Liens, or Interest shall be precluded from

asserting against the Debtors or Reorganized Debtors or any of their assets or

properties, any other or further Claim or Interest based on any document, instrument,

act, omission, transaction, or other activity of any kind or nature that occurred before

the date of this Order.

      39.  <u>Injunctions; Stays</u>.  (a) The commencement or continuation of

any action or the employment of process with respect to any Claim, Interest, Lien or

debt discharged under the Plan, or any act to collect, recover, or offset any Claim or

Interest discharged under the Plan as a personal liability of the Debtors, or from

properties of the Debtors, shall be, and hereby are, forever enjoined.  Except as

otherwise expressly provided in the Plan or this Order, all entities who have held,

hold, or may hold Claims against or Interests or Liens in the Debtors shall be

permanently enjoined, on and after the date of this Order, subject to the occurrence

of the Effective Date, from (i) commencing or continuing in any manner any action

or other proceeding of any kind against the Debtors or their property with respect to

27

any such Claim, Lien, or Interest, (ii) the enforcement, attachment, collection, or

recovery by any manner or means of any judgment, award, decree, or order against

the Debtors on account of any such Claim, Lien, or Interest, (iii) creating, perfecting,

or enforcing any encumbrance of any kind against the Debtors or against the

property or interests in property of the Debtors on account of any such Claim, Lien,

or Interest, and (iv) asserting any right of setoff, subrogation, or recoupment of any

kind against any obligation due from the Debtors or against the property or interests

in property of the Debtors on account of any such Claim, Lien, or Interest. The

foregoing injunction shall extend to successors of the Debtors (including, but not

limited to, the Reorganized Debtors) and their respective properties and interests in

property.

        (b) In accordance with Article XIV.L of the Plan, unless

otherwise provided in the Plan or in this Order, all injunctions or stays in effect in the

Debtors' Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any

order of this Court, and extant on the Confirmation Date (excluding any injunctions

or stays contained in the Plan or this Order), shall remain in full force and effect until

the Effective Date. From and after the Effective Date, all injunctions or stays

contained in the Plan or this Order shall remain in full force and effect in accordance

with their terms.

28

40.  <u>Releases</u>.  All discharges, releases, injunctions, and exculpations provided for in the Plan, including those described in Articles XIV.F, XIV.G, and XIV.H of the Plan, as modified, are fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, their Claim and Interest holders, and the Reorganized Debtors, and are hereby approved as an essential part of the Plan. Except as otherwise expressly provided in the Plan or in this Order, subject to the occurrence of the Effective Date, such discharges, releases, injunctions, and exculpations shall be, and they hereby are, effective and binding on the Bound Parties.

41.  <u>Revesting Of Property</u>.  In accordance with Article IV.F of the Plan, and except as otherwise expressly provided in the Plan, including, but not limited to, Article III thereof, or this Order, the property of each Debtor's Estate, together with any property of each Debtor that is not property of its Estate and that is not specifically disposed of pursuant to the Plan, shall revest in the applicable Reorganized Debtor on the Effective Date.  No property of the Debtors' Estate is being, or should be deemed to be, abandoned pursuant to section 554 of the Bankruptcy Code or otherwise.  Thereafter, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and this Court.  As of the Effective Date, all property of the Reorganized Debtors shall be free and clear of all Claims, encumbrances, Interests, charges, and Liens except as specifically provided in the

29

Plan or this Order.  Without limiting the generality of the foregoing, the Reorganized

Debtors may, without application to or approval by the Court, pay professional fees

and expenses incurred after the Confirmation Date.

       42.   Intercompany Claims and Interests. The treatment of

Intercompany Claims and Interests in non-Debtor affiliates as set forth in the Plan

and the Plan Supplement, and as modified hereby, is approved in its entirety.

       43.   Approval Of Initial Officers, Directors.  (a) Pursuant to section

1129(a)(5)(A)(ii) of the Bankruptcy Code, the Court approves as consistent with the

interests of holders of Claims and Interest and with public policy the selection,

election, and/or continuance, as the case may be, of the individuals designated by the

Creditors' Committee and Laminar and identified by the Debtors as officers or

directors of Reorganized RCN; *provided, however,* that nothing set forth herein shall

prevent any of the foregoing individuals from resigning as an officer or director

without further order of the Court.

       (b)  Without further event or action by any Person (other than

the occurrence of the Effective Date), each of the individuals referred to above may

become or continue as a director of Reorganized RCN.  On the Effective Date (a) the

terms of the current members of the board of directors of RCN shall expire and the

members thereof who are not continuing as directors of Reorganized RCN shall

cease to serve in such capacity and (b) the operation of Reorganized RCN shall

become the general responsibility of the board of directors of Reorganized RCN,

subject to, and in accordance with, the Reorganized RCN Certificate of Incorporation

and By-Laws, which are hereby approved.

44.    Securities Distribution Date.  The Securities Distribution Date

for purposes of all distributions to be made under the Plan shall be the first date

distributions are made to holders of Senior Notes, Preferred Stock and Common

Stock under the Plan.

45.    Plan Modifications.  At the request of the Debtors, the Plan is

hereby modified pursuant to 11 U.S.C. § 1127(a) as follows:

(i)    Article III is modified by deleting Article
III.F in its entirety and inserting in its place the following (new
language is underlined):

**F.  Intercompany Claims**

On the Effective Date, all net Claims (taking into account any setoffs)
between and among the Debtors or between one or more Debtors and a
non-Debtor affiliate shall, at the election of the applicable Debtor-obligor,
with the consent of the Creditors' Committee, be either (i) reinstated, (ii)
released, waived and discharged or (iii) contributed to, or dividended to, the
capital of the obligor corporation.  Any such Claims to be reinstated are set
forth in a schedule of Intercompany Claims contained in the Plan Supple-
ment.  The Debtors are authorized to set off any Claims between and among
the Debtors or between and among one or more Debtors and a non-Debtor
affiliate.

(ii)    Article IV.E is modified by deleting the third
sentence of the paragraph and inserting the following at the end of the
second sentence:

31

*provided, however*, that as long as D. E. Shaw Laminar Lending 2, Inc. ("Laminar") beneficially owns at least $25,000,000 of the outstanding aggregate principal amount of the Convertible Second-Lien Notes, Reorganized RCN will nominate, and use its best efforts to have elected to the board of Reorganized RCN, one individual designated by Laminar.  In addition, as long as Laminar is entitled to elect a board member, Laminar shall be entitled to fill any vacancy created by the death, disability, retirement or removal (with or without cause) of the Laminar board member.

(iii)    Article XIV of Plan is modified by inserting the following

Article XIV.I immediately following Article XIV.H:

**I.        Limitations on Scope of Director, Officer, Employee and Other Third Party Releases**

Notwithstanding Article XIV.H of the Plan or any provision in any documents incorporating or implementing in any manner such Article to the contrary, (i) nothing in the Plan and the transactions approved hereby is intended to, or shall release any non-Debtor from any liabilities or obligations to the United States of America or its agencies or subdivisions (the "United States"), nor shall it enjoin or bar any claim by the United States against any non-Debtor, and (ii) solely as to non-Debtors, the Plan shall in no way affect (a) the agreement reached between RCN Telecom Services, Inc. and Newport Associates Development Company in settlement of certain litigation in the New Jersey Superior Court, Hudson County, Law Division, captioned Newport Associates Development Company v. RCN Telecom Services, Inc., et al., Docket No. HUD-L-4407-02, and consolidated with Docket No. HUD-L-4810-02, as such settlement agreement was read into the record of the trial court on July 22, 2004, (b) the License Agreement dated as of July 30, 2004, by and between RCN Telecom Services, Inc. and Newport Associates Development Company, and/or (c) the rights and obligations of the parties (other than the Debtors), or any successor parties, to (a) and (b) above.

Notwithstanding any provision in the Plan or any provision in any documents incorporating or implementing in any manner the Plan to the contrary, no current or former directors, officers, employees, partners, members, or managers of the Debtors (collectively, the "Third-Party Releasees")

shall be released from, and there shall be no injunction with respect to, (i) any claim against a non-Debtor arising from such Third-Party Releasees' alleged breach of fiduciary duty arising under, or as a consequence of, the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), and asserted by the claimants in each of those actions captioned <u>Craig v. Filipowicz, et al.</u>, Case No. 1:04-CV-07875 (JSR) (S.D.N.Y.), <u>Thomas v. McCourt, et al.</u>, Case No. 3:04-CV-05068 (SRC) (D.N.J.), <u>Maguire v. Filipowicz, et al.</u>, Case No. 1:04-CV-08454 (JSR) (S.D.N.Y.), and <u>Hill v. McCourt, et al.</u>, Case No. 3:04-CV-05368 (SRC) (D.N.J.), in each case relating to the RCN Savings and Stock Ownership Plan (the "ESOP"); (ii) any claim asserted against a non-Debtor by (a) any ERISA fiduciaries of the ESOP or (b) any other defendant named in any of the suits identified in item (i) of this paragraph or in any other suit raising similar claims, including, but not limited to, (y) claims against a non-Debtor for indemnity or contribution and (z) claims against a non-Debtor asserted by Merrill Lynch Trust Company FSB; or (iii) any claim against a non-Debtor asserted by Edward T. Joyce relating in any way to the acquisition of 21st Century Telecom Group, Inc.  Notwithstanding any provisions of the Plan, nothing in the Plan shall in any way limit or abrogate any available insurance coverage or rights to recover insurance proceeds available to pay any claims for the settlement or satisfaction of a judgment.

46.  <u>Additional Modifications</u>.  Without the need for a further order or authorization of this Court, but subject to the express provisions of this Order, the Debtors, with the prior written consent of the Creditors' Committee, shall be authorized and empowered to make non-material modifications to the documents filed with the Court, including the documents included in the Plan Supplement or forming part of the evidentiary record at the Confirmation Hearing, in their reasonable business judgment as may be necessary.  Further, following entry of this Order, the Debtors shall be authorized, with prior written consent of the Creditors' Committee and upon further order of the Bankruptcy Court, to alter, amend, or modify the Plan

in accordance with section 1127(b) of the Bankruptcy Code, or to remedy any defect

or omission or reconcile any inconsistency in the Plan in such manner as may be

necessary to carry out the purpose and intent of the Plan.

       47.   <u>General Authorizations</u>.  Pursuant to section 1142(b) of the

Bankruptcy Code and the terms of the Plan, each of the Debtors and the Reorganized

Debtors, as the case may be, and any officer thereof, are authorized without the need

for further shareholder or Court approval to execute and deliver, and take such action

as is necessary to effectuate the terms of, implement, or further evidence the con-

tracts, instruments, securities, and other agreements and documents contemplated by

the Plan and the terms and conditions of the Plan, including, without limitation, to:

         (i)   issue, execute, deliver, file, and record any documents, Court papers, or pleadings, and to take any and all actions as may be necessary or desirable to implement, effect, or consummate the transactions contemplated by the Plan, whether or not specifically referred to in the Plan or related documents and without further application to or order of the Court;

         (ii)   issue the securities, instruments, and other interests contemplated by the Plan, including, but not limited to, the New Common Stock and New Warrants, all as described in the Plan and the exhibits thereto, which issuance shall be exempt under section 1145 of the Bankruptcy Code from the registration requirements of the Securities Act and any similar state or local law;

         (iii)   issue the Convertible Second-Lien Notes, which issuance shall be exempt under Section 4(2) of the Securities Act from registration under the Securities Act and any similar state or local law.

(iv)  file with the appropriate Secretar(ies) of State the Reorganized RCN certificate of incorporation, substantially in the form previously filed with the Court in the Plan Supplement; and

(v)  ratify the by-laws of Reorganized RCN substantially in the form previously filed with the Court in the Plan Supplement.

48.  Authorizations Relating To The First-Lien Credit Facility.

(i)  The execution, delivery and performance of the First-Lien Credit Agreement (as defined in Exhibit 6 to the Plan Supplement), and all documents, instruments, and agreements contemplated by the First-Lien Credit Agreement, including, but not limited to, the pledge agreement, the security agreement and the mortgages (collectively, the "First-Lien Credit Facility Documents"), are hereby approved.

(ii)  The Reorganized Debtors are hereby authorized and directed to execute such other documents as the applicable Reorganized Debtor and the applicable lender may reasonably require in order to effectuate the financing contemplated by the First-Lien Credit Agreement (the "First-Lien Credit Facility").

(iii)  The Debtors and Reorganized Debtors are hereby authorized and directed to grant to the lenders under the First-Lien Credit Agreement or other appropriate party valid, binding, enforceable and perfected security interests in and liens upon all collateral specified in the First-Lien Credit Facility Documents to secure all of the obligations under or in connection with the First-Lien Credit Facility.  Each document, instrument, and agreement executed in connection with the First-Lien Credit Facility Documents shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms. The security interests and liens granted pursuant to, or in connection with, the First-Lien Credit Facility Documents (and all documents, instruments and agreements related thereto and annexes, exhibits and schedules appended thereto) shall constitute, as of the Effective Date, legal, valid and duly perfected first priority liens and security interests in and to the collateral specified therein, subject only, where

35

applicable, to the pre-existing liens and security interests specified or permitted in the First-Lien Credit Facility Documents.

(iv)   The Debtors and Reorganized Debtors, and any other persons granting such liens and security interests, are authorized and directed to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of state, provincial, federal, or other law (whether foreign or domestic) that would be applicable in the absence of this Confirmation Order, and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

(v)   Based upon the record of these Chapter 11 Cases, the security interests to be granted by the Debtors and/or Reorganized Debtors pursuant to, or in connection with, the First-Lien Credit Facility Documents do not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any federal or state law.

49.   <u>Authorizations Relating To The Convertible Second-Lien Notes</u>.

(i)   The execution, delivery and performance of all documents and agreements relating to the Convertible Second-Lien Notes, including, but not limited to, the purchase agreement, the indenture, the pledge agreement and the security agreement (collectively, the "Convertible Second-Lien Notes Documents"), are hereby approved.

(ii)   The Reorganized Debtors are hereby authorized and directed to execute such other documents as the applicable Reorganized Debtor and the purchasers of the Convertible Second-Lien Notes (the "Purchasers") may reasonably require in order to effectuate the issuance thereof.

(iii)   The Debtors and Reorganized Debtors are hereby authorized and directed to grant the Purchasers of the Convertible Second-Lien Notes or other appropriate party valid, binding, enforceable and perfected security interests in and liens upon all collateral specified in the Convertible Second-Lien Notes Docu-

36

ments to secure all of the obligations under or in connection with the
Convertible Second-Lien Notes.  Each document, instrument, and
agreement executed in connection with the Convertible Second-Lien
Notes Documents shall constitute legal, valid, binding and authorized
obligations of the respective parties thereto, enforceable in accordance
with their terms.  The security interests and liens granted pursuant to,
or in connection with, the Convertible Second-Lien Notes Documents
(and all documents, instruments and agreements related thereto and
annexes, exhibits and schedules appended thereto) shall constitute, as
of the Effective Date, legal, valid and duly perfected second priority
liens and security interests in and to the collateral specified therein,
subject only to (i) the first-priority liens and security interests
specified in the First-Lien Credit Facility Documents or the
documents, instruments or agreements contemplated thereby, and (ii)
the terms and conditions of the intercreditor agreement  between RCN
and the collateral agents under each of the First-Lien Credit Agree-
ment, the Convertible Second-Lien Notes, and the New Evergreen
Credit Agreement (the "Intercreditor Agreement").

(iv)    The Debtors or Reorganized Debtors, and any
other persons granting such liens and security interests, are authorized
and directed to make all filings and recordings, and to obtain all
governmental approvals and consents necessary to establish and
perfect such liens and security interests under the provisions of state,
provincial, federal, or other law (whether foreign or domestic) that
would be applicable in the absence of this Confirmation Order, and
will thereafter cooperate to make all other filings and recordings that
otherwise would be necessary under applicable law to give notice of
such liens and security interests to third parties.

(v)    Based upon the record of these Chapter 11
Cases, the security interests to be granted by the Debtors and/or
Reorganized Debtors pursuant to, or in connection with, the
Convertible Second-Lien Notes Documents do not constitute
preferential transfers or fraudulent conveyances under the Bankruptcy
Code or any federal or state law.

50.    Authorizations Relating To The New Evergreen Credit Facility.

37

(i)    The execution, delivery and performance of all documents and agreements relating to the New Evergreen Credit Agreement (as defined in Exhibit 5 to the Plan Supplement), and all documents, instruments and agreements contemplated by the New Evergreen Credit Agreement, including but not limited to, the pledge agreement, security agreement and subsidiary guarantee (collectively, the "New Evergreen Credit Facility Documents"), are hereby approved.

(ii)    The Reorganized Debtors are hereby authorized and directed to execute such other documents as the applicable Reorganized Debtor and the applicable lender parties may reasonably require in order to effectuate the financing contemplated by the New Evergreen Credit Agreement (the "New Evergreen Credit Facility").

(iii)    The Debtors and Reorganized Debtors are hereby authorized and directed to grant to the lenders under the New Evergreen Credit Agreement or other appropriate party valid, binding, enforceable and perfected security interests in and liens upon all collateral specified in the New Evergreen Credit Facility Documents to secure all of the obligations under or in connection with the New Evergreen Credit Facility.  Each document, instrument, and agreement executed in connection with the New Evergreen Credit Facility Documents shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.  The security interests and liens granted pursuant to, or in connection with, the New Evergreen Credit Facility Documents (and all documents, instruments and agreements related thereto and annexes, exhibits and schedules appended thereto) shall constitute, as of the Effective Date, legal, valid and duly perfected third priority liens and security interests in and to the collateral specified therein, subject only to (i) the first-priority liens and security interests specified in the First-Lien Credit Facility Documents or the documents, instruments or agreements contemplated thereby, (ii) the second-priority liens and security interests specified in the Convertible Second-Lien Notes Documents or the documents, instruments or agreements contemplated thereby and (iii) the terms and conditions of the Intercreditor Agreement.

38

(iv)   The Debtors and Reorganized Debtors, and any other persons granting such liens and security interests, are authorized and directed to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of state, provincial, federal, or other law (whether foreign or domestic) that would be applicable in the absence of this Confirmation Order, and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

(v)   Based upon the record of these Chapter 11 Cases, the security interests to be granted by the Debtors and/or Reorganized Debtors pursuant to, or in connection with, the New Evergreen Credit Facility Documents do not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any federal or state law.

51.   <u>Matters Relating to Chicago Settlement</u>.  In aid of implementation of Article X.B.7 of the Plan, which provides that as a condition precedent to the occurrence of the Effective Date of the Plan with respect to RCN Cable TV of Chicago, Inc. and 21st Century Telecom Services, Inc. (collectively, the "Chicago Debtors"), the Claims of Chicago Access Corporation (the "CAC") and the City of Chicago shall have been resolved by way of litigation or otherwise with the consent of the Creditors' Committee, the Effective Date of the Plan with respect to the Chicago Debtors only shall occur upon the later of (i) the effective date of that certain Release and Settlement Agreement among RCN Cable TV of Chicago, Inc. ("RCN-Chicago"), RCN, and the City of Chicago dated November 12, 2004 or (ii) the effective date of any settlement agreement between RCN-Chicago and/or RCN,

on the one hand, and the CAC, on the other hand, provided that such settlement

agreement shall have been reached with the consent of the Creditors' Committee.

      52.  <u>Matters Relating to the Scripps Settlement</u>.  Notwithstanding

anything in this Order or the Plan to the contrary, all rights of Scripps Networks,

Inc., a/k/a Home and Garden Television, a/k/a HGTV, under any assumed contract

relating to HGTV  ("HGTV Contract"), and the rights of any other party to such

HGTV Contract related to such contract, are all expressly preserved, including but

not limited to rights to collect prepetition amounts or to enforce, by any contractually

permissible means, default provisions, and such rights will continue to exist follow-

ing the Effective Date of the Plan; *provided, however*, that no cure claim arising

through December 8, 2004, related to the HGTV Contract shall exceed $65,000.

Nothing in the Plan or Order shall constitute a determination of what amounts, if

any, are due to any person under the HGTV Contract.  Any cure dispute arising

under the HGTV Contract may be brought in this Court or any other forum of

competent jurisdiction upon proper notice.

      53.  <u>Matters Relating to the NCTC Settlement</u>.  Notwithstanding

anything to the Contrary in this Order or the Plan, this Order shall constitute an order

authorizing and approving the Debtors' assumption of the Member Agreement

between the National Cable Television Cooperative ("NCTC") and the Debtors,

dated as of July 1, 2000 (the "NCTC Agreement"), referenced in the Objection Of

40

National Cable Television Cooperative To Assumption Of Executory Contracts And

Unexpired Leases Pursuant To Joint Plan Of Reorganization Of RCN Corporation

And Certain Of Its Subsidiaries (Docket No. 445)(the "NCTC Cure Objection"),

subject to the following provisions of this paragraph relating to NCTC's cure claims

and related issues.  All of NCTC's rights asserted in the NCTC Cure Objection with

respect to cure claims arising under the NCTC Agreement , and the Debtors' rights

thereto, including, without limitation, the right to assert that they are entitled to the

terms provided by the ESPN LTAP Agreement (as defined in the NCTC Cure

Objection) are preserved; *provided, however*, that the portion of such cure claim

arising on or before November 30, 2004 shall not exceed $500,000.  The Debtors or

NCTC may assert the rights preserved by this Order in this Court or any other forum

of competent jurisdiction, upon proper notice.

       54.   <u>Matters Relating To Cash Collateral</u>.  Notwithstanding anything

to the contrary contained in the Plan or this Order, the obligations under and as

defined in the cash collateral order, dated June 22, 2004, as amended (the "Cash

Collateral Order") for the Bank Credit Agreement and the rights, Claims, liens,

priorities, and other protections provided to the Senior Secured Lenders under the

Bank Credit Agreement and to JPMorgan, as administrative agent for the Senior

Secured Lenders, under the Bank Credit Agreement, as well as the Debtors' rights to

use cash collateral in accordance with the terms of the Cash Collateral Order, shall

41

survive the occurrence of the Confirmation Date and continue in full force and effect

until the Effective Date, subject to earlier termination in accordance with the terms

of the Cash Collateral Order.

      55.  <u>Creditor's Committee</u>.  On the Effective Date, the duties of the

Creditors' Committee shall terminate; *provided, however*, that the Creditors'

Committee shall continue in existence after the Effective Date to (i) continue in the

prosecution (including appeals) of any matter in which the Creditors' Committee has

joined issue; (ii) review, and, if necessary, interpose and prosecute objections to

Professional Claims; and (iii) file applications for Professional Claims; *and provided,*

*further*, that the Creditors' Committee shall be entitled to obtain reimbursement for

the reasonable fees and expenses of its members and Professionals relating to the

foregoing.

      56.  <u>Resolution of Claims</u>.  The Debtors and Reorganized Debtors are

authorized to resolve disputed, contingent, and unliquidated claims pursuant to, and

in accordance with, the provisions of Article VI of the Plan.

      57.  <u>Exemption from Securities Laws</u>.  The provisions of section

1145 of the Bankruptcy Code are applicable to the issuance and distribution of the

New Common Stock and the New Warrants in exchange for the recipients' Claims or

Interests in the Debtors.  In addition, Section 4(2) of the Securities Act is applicable

to the issuance and distribution of the Convertible Second-Lien Notes to the Purchas-

42

ers.  Therefore, to the extent that an "offer or sale" is deemed to have occurred, any

such securities are exempt from the requirements of Section 5 of the Securities Act

and any state or local registration requirements.

58.  <u>Cancellation Of Existing Securities</u>.  Except as otherwise

provided in the Plan or this Order (a) the Existing Securities and any other note,

bond, indenture, or other instrument or document evidencing or creating any

indebtedness or obligation of a Debtor shall be cancelled and of no further force and

effect and (b) the obligations of the Debtors under any agreements, indentures, or

certificates of designations governing the Existing Securities and any other note,

bond, indenture, or other instrument or document evidencing or creating any indebt-

edness or obligation of a Debtor, as the case may be, shall be discharged; *provided,*

*however,* that such discharge and cancellation shall not impair the rights of holders

of the Existing Securities to receive distributions on account of such Existing

Securities pursuant to the Plan and each indenture or other agreement that governs

the rights of a holder of a Claim and that is administered by an Indenture Trustee

shall continue in effect for the purposes of allowing the Indenture Trustee to make

any distributions on account of such Claims pursuant to the Plan and to perform any

other necessary administrative functions with respect thereto.

59.  <u>Exemption From Stamp Taxes</u>.  Pursuant to section 1146(c) of

the Bankruptcy Code, the issuance, transfer, or exchange of any security, or the

making, delivery, filing, or recording of any instrument of transfer under the Plan,

shall not be taxed under any law imposing a recording tax, stamp tax, transfer tax, or

similar tax.  All filing or recording officers, wherever located and by whomever

appointed, are hereby directed to accept for filing or recording, and to file or record

immediately upon presentation thereof, all instruments of absolute or collateral

transfer without payment of any recording tax, stamp tax, transfer tax, or similar tax

or governmental assessment (other than standard filing fees) imposed by federal,

state, or local law.  Notice of entry of this Order in the form approved by the Court

(i) shall have the effect of an order of the Court, (ii) shall constitute sufficient notice

of the entry of this Order to such filing and recording officers, and (iii) shall be a

recordable instrument notwithstanding any contrary provision of applicable

nonbankruptcy law.  The Court specifically retains jurisdiction to enforce the

foregoing direction, by contempt or otherwise.

   60. <u>Payment Of United States Trustee Fees</u>.  All fees payable by the

Debtors under 28 U.S.C. § 1930 shall be paid on or before the Effective Date.

   61. <u>Failure To Confirm Or Consummate Plan</u>.  In accordance with

Article XIV.N of the Plan, if consummation of the Plan does not occur, then (a) the

Plan shall be null and void in all respects, (b) any settlement or compromise embod-

ied in the Plan (including the fixing or limiting to an amount of any Claim or Interest

or Class of Claims or Interests), assumption or rejection of executory contracts or

44

04-13638-rdd    Doc 483    Filed 12/08/04    Entered 12/08/04 13:56:47    Main Document
Pg 45 of 50
04-13638-rdd    Doc 483    Filed 12/08/04    Entered 12/08/04 13:56:47    Main Document
Pg 45 of 50

leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or any other Person.

62. <u>Retention Of Jurisdiction</u>.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Order or the occurrence of the Effective Date, this Court shall retain exclusive jurisdiction (except with respect to the purposes described in Article XII.M of the Plan, with respect to which jurisdiction shall not be exclusive) over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction over those items and matters set forth in Article XII of the Plan.

63. <u>References To Plan</u>.  Any document related to the Plan that refers to a plan of reorganization of the Debtors other than the Plan confirmed by this Order shall be, and it hereby is, deemed to be modified such that the reference to a plan of reorganization of the Debtors in such document shall mean the Plan confirmed by this Order, if appropriate.

45

64.  <u>References To Plan Provisions</u>.  The failure specifically to

include or reference any particular provision of the Plan in this Order shall not

diminish or impair the effectiveness of such provision, it being the intent of the Court

that the Plan be confirmed in its entirety.

65.  <u>Inconsistency</u>.  In the event of an inconsistency between the

Plan, on the one hand, and any other agreement, instrument, or document intended to

implement the provisions of the Plan, on the other, the provisions of the Plan shall

govern (unless otherwise expressly provided for in such agreement, instrument, or

document).  In the event of any inconsistency between the Plan or any agreement,

instrument, or document intended to implement the Plan, on the one hand, and this

Order, on the other, the provisions of this Order shall govern.

66.  <u>Notice Of Entry Of Confirmation Order</u>.  In accordance with

Fed. R. Bankr. P. 2002 and 3020(c), within five business days of the date of entry of

this Confirmation Order, the Reorganized Debtors (or their agents) shall give notice

of the entry of this Order, in substantially the form of Exhibit B annexed hereto (the

"Notice of Confirmation"), by United States first class mail postage prepaid, by

hand, or by overnight courier service to all parties served with the Confirmation

Hearing Notice; *provided, however,* that no notice or service of any kind shall be

required to be mailed or made upon any person to whom the Debtors mailed a

Confirmation Hearing Notice, but received such notice returned marked

46

"undeliverable as addressed," "moved - left no forwarding address," or "forwarding

order expired," or similar reason, unless the Debtors have been informed in writing

by such person, or are otherwise aware, of that person's new address.  To supplement

the notice described in the preceding sentence, within fifteen days of the date of this

Order the Debtors shall publish the Notice of Confirmation in the Wall Street

Journal.  Mailing and publication of the Notice of Confirmation in the time and

manner set forth in the preceding paragraph are good and sufficient under the

particular circumstances and in accordance with the requirements of Fed. R. Bankr.

P. 2002 and 3020(c).

       67.   Authorization To Consummate.  The Debtors are authorized to

consummate the Plan at any time after entry of this Order subject to the satisfaction

or waiver of the conditions precedent to Consummation set forth in Article X.C of

the Plan.

       68.  For cause shown, as set forth on the record of the Confirmation
hearing, the stay of this Confirmation Order under Fed. R. Bankr. P. 3020(e) shall
not apply.

Dated:  New York, New York
      December  8, 2004

                               /s/Robert D. Drain
                               United States Bankruptcy Judge

47

<u>Exhibit A</u>

Joint Plan Of Reorganization
<u>Of RCN Corporation And Certain Subsidiaries</u>

<u>Exhibit B</u>

<u>Form Of Notice Of Entry Of Confirmation Order</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re                                    :

                                         :        Chapter 11

RCN CORPORATION, *et al.*,               :        Case No. 04-13638 (RDD)

                                         :        (Jointly Administered)

                 Debtors.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF (I) ENTRY OF ORDER CONFIRMING JOINT PLAN OF REORGANIZATION OF
RCN CORPORATION AND CERTAIN SUBSIDIARIES AND (II) DEADLINE FOR FILING ADMINISTRATIVE CLAIMS

TO ALL CREDITORS, EQUITY SECURITY HOLDERS, AND OTHER PARTIES-IN-INTEREST:

PLEASE TAKE NOTICE that on December [ ? ], 2004 (the "Confirmation Date"), the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Confirmation Order") confirming the Joint Plan of Reorganization Of RCN Corporation And Certain Subsidiaries (collectively, the "Debtors"), dated [    ], 2004 (the "Plan"). Unless otherwise defined, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan.

PLEASE TAKE FURTHER NOTICE that pursuant to 11 U.S.C. § 1141(a), the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to, the Plan) and the Confirmation Order shall be binding on (i) the Debtors, (ii) the Reorganized Debtors, (iii) all holders of Claims against and Interests in any of the Debtors, whether or not Impaired under the Plan and whether or not, if Impaired, such holders accepted, rejected, or are deemed to have accepted or rejected the Plan, (iv) each Person acquiring property under the Plan, (v) all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, (vi) all entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or the Confirmation Order, and (vii) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any.

PLEASE TAKE FURTHER NOTICE that pursuant to the Plan, 4:00 p.m. (Eastern Time) on [    ] ? , 2005 (the "Administrative Claims Bar Date") has been established as the last date and time for holders of claims (other than Professional Fee Claims and claims for reimbursement of the expenses of the members of the Creditors' Committee) asserted to be entitled to priority as administrative claims under §§ 503(b) or 507(a) of the Bankruptcy Code to submit requests for payment thereof ("Administrative Claim Requests"). Administrative Claim Requests must be filed with the filed with the Bankruptcy Court, together with proof of service, at http://www.nysb.uscourts.gov, in accordance with the Bankruptcy Court's general order setting forth Electronic Filing Procedures, as amended, with a hard copy delivered to the chambers of the Honorable Robert D. Drain, and a copy to counsel for the Debtors at the address listed below, so that they are RECEIVED no later than the Administrative Claims Bar Date. Any person or entity that fails to file an Administrative Claim Request on or before the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting any such claim against the Debtors, their successors, or their property (or filing a proof of claim with respect thereto), and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such claim.

PLEASE TAKE FURTHER NOTICE that any party-in-interest wishing to obtain copies of the Confirmation Order may request such copies at his or her own expense by contacting Bennett Silverberg, Esq. at Skadden Arps, Slate, Meagher & Flom LLP, (212) 735-3000. Copies of the Confirmation Order may also be reviewed during regular business hours at the Office of the Clerk of the Bankruptcy Court or by accessing the Bankruptcy Court's web site at http://www.nysb.uscourts.gov. A password is necessary to access documents on this website. Information regarding acquisition of a password is available on the website.

Dated:    New York, New York                         BY ORDER OF THE BANKRUPTCY COURT
          December ?, 2004                            Robert D. Drain, United States Bankruptcy Judge

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Attorneys for RCN Corporation, et al.
Debtors and Debtors-in-Possession
Four Times Square
New York, New York  10036-6522
(212) 735-3000
D. J. Baker (DB 0085)

565975.01-New York Server 1A - MSW