Dennis F. Dunne (DD 7543)
Susheel Kirpalani (SK 8926)
Lena Mandel (LM 3769)
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000

Attorneys for RCN Corporation, et al.,
Reorganized Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------x
In re                                  :     Chapter 11
                                       :
RCN CORPORATION, et al.,               :     Case No. 04-13638 (RDD)
                                       :
            Reorganized Debtors.       :     Jointly Administered
-----------------------------------------------x

**LIMITED REPLY OF RCN CORPORATION TO MEGACABLE'S OBJECTION
TO MOTION FOR ENTRY OF ORDER (a) CLARIFYING
CERTAIN TERMS OF CONFIRMATION ORDER OR, (b) IN THE
ALTERNATIVE, MODIFYING CERTAIN TERMS OF CONFIRMATION
ORDER PURSUANT TO FED. R. CIV. P. 60(b) AND FED. R. BANKR. P. 9024**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

            RCN Corporation, one of the reorganized debtors in the above-captioned

cases ("RCN"), hereby submits a limited reply to the objection (the "Objection") by

Megacable, S.A. de C.V. and its majority shareholders (collectively, "Megacable") to RCN's

motion, dated November 22, 2005 (the "Confirmation Order Motion"), for entry of an order

seeking to clarify the effect of the Confirmation Order[1] entered in these cases by this Court

or, in the alternative, to modify the Confirmation Order.

**PRELIMINARY STATEMENT**

---
[1] Certain capitalized terms not otherwise defined have the respective meanings ascribed to them
in the Confirmation Order Motion.

1.      The predictions RCN has made to the Court have materialized.
Since the last hearing, RCN has received and reviewed the arbitration demand from the
proceeding commenced by Megacable against RCN's wholly owned subsidiary, RCN
International.  In that proceeding – filed after RCN advised Megacable of the
Confirmation Order Motion -- Megacable seeks not only to strip RCN International of its
rights under the Stockholders Agreement and Subscription Agreement by declaring those
agreements terminated as a result of a rejection of a non-existent contract, but it also
seeks to compel a sale of RCN International's interest in Megacable to the Majority
Stockholders **for book value**.  Clearly, this dispute is ripe for adjudication.

2.      For reasons described below, the Court has core jurisdiction to
hear the Confirmation Order Motion.  Moreover, it is critical to focus on the limited
nature of the relief sought in the Confirmation Order Motion.  RCN does **not** seek (i) an
adjudication of the existence or non-existence of the rights and obligations under the
Stockholders Agreement and/or the Subscription Agreement, (ii) to litigate whether it can
be compelled to sell its interest in Megacable for book value, or (iii) to adjudicate any of
the respective rights among RCN International, Megacable, and the Majority
Stockholders under the Stockholders Agreement or the Subscription Agreement.  Rather,
RCN simply asks the Court to review, interpret, clarify and, if necessary, amend its own
orders.

3.      The issues are simple: (i) did RCN (the debtor entity) have any
contractual duties towards Megacable when it filed for chapter 11 and (ii) were these
contractual duties rejected and/or discharged (and therefore breached)  *sub silentio*  when
RCN, its creditors, its reorganization plan and exit lending facility contemplating the
opposite.  Megacable answers both of these questions in the affirmative and has now

even alleged those facts to be true in its arbitration proceeding against a non-debtor.

Contrary to Megacable's assertions, RCN is not asking the Court to decide what happens

to non-debtor contractual relationships if such assumption is true; rather, RCN is seeking

this Court's determination of whether those factual predicates, involving only a chapter

11 debtor and the actions of this Court, are true.

    4.  When subject to even the mildest scrutiny, Megacable's motives

are transparent.  First, Megacable advised RCN in the spring of 2005 that it believed any

obligations of RCN in respect of Megacable had been assumed.  So did RCN, and the

parties' belief meant it was business as usual.  Shortly thereafter, Megacable stated that it

was "concerned" that the Plan's default provision for rejection of executory contracts

may have had the consequence of rejecting RCN's obligations, thereby creating a breach

at the non-debtor, RCN International, level.  RCN explained that it was not the case,

offered to execute any document that would provide Megacable the comfort it needed,

and even offered to seek clarification from the Court if Megacable required that level of

certainty.  In other words, RCN confirmed that both its and Megacable's expectations

that RCN's bankruptcy did not impair any of Megacable's rights were correct.

    5.  This litigation and the Arbitration would have been avoided had

Megacble stayed true to its original beliefs. Tellingly, Megacable reflected on its options

and surprisingly took the position that it now believed RCN impaired its obligations.

Why would a party alleging to have a contract with a debtor take the position that its

rights were impaired when the debtor insisted otherwise?  The answer was foreshadowed

by RCN in its Sealing Motion, and is now confirmed by the commencement of the

Arbitration.  Megacable wants to corner RCN into a position where it will feel impelled

to sell its Megacable Interests at a significant discount to their fair market value.

6.      Megacable's majority shareholders have been offering to buy out RCN's Megacable Interests both during and after the chapter 11 case.   Since these overtures have not succeeded, Megacable has two options: to increase the purchase price to reflect true value, or to create arguments that this Court has done something to inadvertently reject or otherwise impair some ancillary obligations at the parent level that ripple through the Megacable Agreements at the non-Debtor level, eviscerating the protections of RCN International as Megacable's minority stockholder and frustrating the expectations of RCN's erstwhile creditors with respect to the value of the distributions they received under the Plan.  Megacable has chosen to pursue the latter tact.  Equity abhors a windfall and this Court should abhor such behavior.

7.      Neither Megacable nor RCN can adduce any written contract between RCN and Megacable or the Majority Stockholders.  Megacable and the creditors of RCN were repeatedly told throughout the chapter 11 case that the Megacable relashinship, which reside at non-debtor level, would ride through the bankruptcy unimpaired.   The Plan and the exit financing all were premised on this fact.  Accordingly, RCN does not seek to change the Plan, only to clarify what everyone (including Megacable) believed at the time the Plan was approved: RCN's investment in Megacable was not affected by RCN's bankruptcy in any way.


## BACKGROUND

8.      On November 14, 2005, before filing the Confirmation Order Motion, RCN filed a motion seeking authority to file such motion under seal (the "Sealing Motion"). Megacable objected to the Sealing Motion and, on the same date,

4

commenced arbitration proceedings in Paris, France (the "Arbitration") against RCN's subsidiary, RCN International Holdings, Inc., alleging a breach of the Guaranty Agreement in RCN's bankruptcy and seeking the rescission of all Megacable Agreements and a forced sale of RCN's Megacable Interests at their book value.

9.    After the Court denied the Sealing Motion, RCN filed the Confirmation Order Motion on the Court's docket.  Megacable objected to the Confirmation Order Motion, and a preliminary hearing was held in the Court on December 6, 2005.  Some of RCN's concerns underpinning its request to have this matter sealed have become manifest.  For instance, Megacable has now publicly disclosed in its pleadings purported offers and values for RCN's  MegacableInterests  – thereby hoping to create its own public mark in the very assets it wishes to purchase.

10.    In the Objection, Megacable has raised certain "threshold" issues that the Court has requested RCN to address before a briefing and discovery schedule can be agreed regarding the merits of the Confirmation Order Motion.  Accordingly, in this limited reply, RCN will address only the "threshold" issues identified by the Court.  RCN reserves the right to file an expanded reply at a future date, upon completing any necessary discovery, to address the remaining issues raised by the Objection.

11.    The issues raised in the Objection that the Court has requested RCN to address in the first instance are (a) ripeness, and (b) the Court's subject matter jurisdiction.[2]

## LIMITED REPLY

### I.    This Matter is Ripe for Adjudication

---

[2] Megacable has also asserted, albeit in a footnote, that the Confirmation Order Motion was untimely under section 1144 of the Bankruptcy Code.  Objection, fn. 4.  RCN finds this assertion rather puzzling since it is certainly NOT seeking a revocation of the Confirmation Order and, accordingly, section 1144 of the Bankruptcy Code is not applicable.

12.    In the Confirmation Order Motion, RCN has stated that the reason

for filing such motion was RCN's concern that Megacable may assert that a breach (by

bankruptcy fiat) under the Guaranty Agreement was effected by virtue of confirmation of

the Plan.  The Court has inquired whether such allegation has, in fact, been made, thus

making the matters set forth in the Confirmation Order Motion ripe for adjudication.

13.    The Arbitration Demand served on RCN International clearly

states that Megacable's sole grounds for commencing the Arbitration is its professed

belief that the Guaranty Agreement was rejected in RCN's bankruptcy or that

Megacable's rights under the Guaranty Agreement were otherwise unfavorably affected

by the Confirmation Order.  Based on such alleged rejection/discharge, the Arbitration

Demand seeks the rescission of all of the Megacable Agreements and the right to buy out

RCN's Megacable Interests at book value (which obviously represents only a fraction of

their market value).

14.    Accordingly, the Confirmation Order Motion presents a justiciable

controversy, ripe for adjudication by the Court.

II.    **The Court Has Subject Matter Jurisdiction over the Confirmation Order
Motion**

15.    Megacable has asserted that the Court lacks subject matter

jurisdiction over the Confirmation Order Motion.  Megacable has asserted the following

reasons for the alleged lack of jurisdiction: (a) the adjudication of the Confirmation Order

Motion is outside the jurisdiction of the Court under the limitations of Article III of the

United States Constitution, (b) even if the Court would have had jurisdiction over the

subject matter of the Confirmation Order Motion pre-confirmation, the limitations of its

post-confirmation jurisdiction have taken such matters outside of the Court's jurisdiction,

6

(c) RCN is seeking a modification of the Plan, while any modifications of a substantially

consummated plan are forbidden under section 1127 of the Bankruptcy Code, and (d) the

Court's adjudication of the Confirmation Order Motion is prohibited by the Federal

Arbitration Act.

       16.     Megacable is being truly disingenuous: on the one hand, it is

asserting that this Court entered an order that affected its rights and obligations, and at the

same time, it is asserting that this Court has no jurisdiction to clarify the provisions of

such order.

     A.   <u>The Court Has Subject Matter Jurisdiction Over Confirmation Order Motion
Since Its Adjudication Is a Core Proceeding</u>

       17.     Megacable correctly states that bankruptcy courts are courts of

limited jurisdiction, and that their jurisdiction is governed by 28 U.S.C. § 157 ("<u>Section</u>

<u>157</u>").  However, Megacable then incorrectly asserts that the Confirmation Order Motion

is not a "core" proceeding because its outcome will allegedly have no effect on the

administration of a fully administered estate, and, thus, the Court lacks subject matter

jurisdiction over it under Section 157.[3]  That is simply incorrect.

       18.     Section 157(b)(2) provides a non-exclusive list of proceedings that

Congress has designated as "core."  Among these proceedings, Section 157(b)(2)

specifically lists matters relating to dischargeability of debts,  <u>see</u> 28 U.S.C. §

157(b)(2)(I) and (J), as well as other proceedings affecting the adjustment of the debtor-

creditor relationships.  <u>See</u> 28 U.S.C. § 157(b)(2)(O).  The Confirmation Order Motion

specifically seeks a determination that no obligations to Megacable were discharged in

---

[3] None of the cases that Megacable has cited purportedly "in support" of this proposition, in fact, supports it.  These are merely cases describing generally the limitations of the jurisdiction of bankruptcy courts after <u>Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.</u>, 458 U.S. 50 (1982), and discussing the "core" versus "non-core" distinction.  In fact, as will be demonstrated below, certain of the cases cited by Megacable support RCN's position.

RCN's bankruptcy. Clearly, the issue of whether a particular claim was or was not

"discharged" is an issue that simply does not exist outside of the bankruptcy context, and,

accordingly, any proceeding to determine such issue is a matter that "by its nature, could

arise only in the context of a bankruptcy case," and is, unquestionably a core proceeding.

In re Wood, 825 F.2d 90, 97 (5th Cir. 1987).

19.    In addition, the determination of whether any of Megacable's

claims were discharged will "affect the adjustment of the debtor-creditor relationships,"

because of its [potentially significant] impact on the value of the very distributions

received by RCN's creditors under the Plan, as described in the Court-approved

Disclosure Statement.

20.    Based on the foregoing, the relief sought in the Confirmation

Order Motion falls squarely within the definition of core proceedings contained in

Section 157.

21.    Moreover, the list contained in Section 157 is non-exclusive, but

merely illustrative. It is axiomatic that bankruptcy courts "have core jurisdiction to

interpret and enforce their orders," particularly confirmation orders. Cox v. Zale

Delaware, Inc., 239 F.3d 910, 917 (7th Cir. 2001). Accord Luan Inv. S.E. v. Franklin 145

Corp. (In re Petrie Retail, Inc.), 304 F.3d 223, 229 (2d Cir. 2002); In re Weber, 25 F.3d

413, 416 (7th Cir. 1994); Williams v. Citifinancial Mortgage Co. (In re Williams), 256

B.R. 885, 892 (8th Cir. B.A.P. 2001).

22.    Finally, as the Second Circuit has stated (citing other Circuit

courts' decisions), proceedings can be core by virtue of their nature if either (a) the cause

of action is "uniquely affected by the bankruptcy proceedings" or (b) it "directly affect[s]

a core bankruptcy function." In re Petrie Retail, Inc., 304 F.3d 223, 229 (2d Cir. 2002).

23.    The <u>Petrie Retail</u> case is very informative.  There, the bankruptcy court (Gonzalez, J.) had entered a sale order that, among other things, included an injunction against attempts to enforce "excluded liabilities" against the purchaser of the debtor's assets.  The confirmation order incorporated the terms of the sale order.  Subsequent to the plan's consummation, a third party (a former lessor of one of the debtor's properties) threatened to sue the purchaser in state court on account of some of such "excluded liabilities."  The purchaser filed a motion in the bankruptcy court seeking enforcement of the sale order injunction and finding the lessor in violation of the confirmation order.  The bankruptcy court granted the motion, despite the lessor's claim of lack of subject matter jurisdiction based on its characterization of the issue as a post-confirmation contract dispute among two non-debtors.  Both the District Court and the Second Circuit Court of Appeals affirmed.

24.    The Second Circuit found that the bankruptcy court had subject matter jurisdiction over the purchaser's motion because, (a) the dispute was based on the rights established by the sale order, thus being "inextricably linked" to such order and, accordingly, sale orders being unquestionably core matters, impacting "core bankruptcy functions," and (b) "[a] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization."   <u>Petrie Retail</u>, 304 F.3d at 229-30.

25.    <u>Petrie Retail</u> is strikingly similar to the matter at hand.  Megacable asserts that a breach of the Guaranty Agreement was effected <u>by legal fiat</u> (not by the conduct of non-debtor parties) through this Court's Confirmation Order, thus the current dispute is "inextricably linked" to the Confirmation Order.  Since "confirmation of plans" is clearly a core matter (see 28 U.S.C. § 157(b)(2)(L)), the "impact of the [Confirmation

Order Motion] on other core bankruptcy functions renders it core." Petrie Retail, 304

F.3d at 229 (citing United States Lines, Inc. v. Am. Steamship Owners Mut. Protection &

Indem. Ass'n, Inc. (In re United States Lines, Inc.), 197 F.3d 631, 637 (2nd Cir. 1999).[4]

See also In re Williams, 256 B.R. 885, 892 (8th Cir. B.A.P. 2001) (proceedings flowing

from a core matter are themselves core matters); Sterling Vision, Inc. v. Sterling Optical

Corp., (In re Sterling Optical Corp.), 302 B.R. 792, 807 (Bankr. S.D.N.Y. 2003) (Gerber,

J.) (same, following Petrie Retail); In re Cedar Chem. Corp., 294 B.R. 224, 229 (Bankr.

S.D.N.Y. 2003) (Bernstein, J.) (same, following Petrie Retail).

B. The Court's Post-Confirmation Jurisdiction is Broad Enough to Interpret Its Own
Confirmation Order

26.     Megacable also asserts that, even if the Court could have asserted

subject matter jurisdiction over the issues dealt with in the Confirmation Order Motion

pre-confirmation, the "shrinking" of the Court's post-confirmation jurisdiction, has

deprived the Court of such jurisdiction post-confirmation.   It is, in fact, hard to imagine a

more obvious example of the appropriateness of the Court's exercise of post-

confirmation jurisdiction that its interpretation of its own Confirmation Order.  See, e.g.,

Petrie Retail, 304 B.R. at 229-30 ("a bankruptcy court retains post-confirmation

---

[4] See also  Ben Cooper, Inc. v. State of Pa. (In re Ben Cooper, Inc.), 896 F.2d 1394, (2d Cir.
1990), vacated and remanded on other grounds, 498 U.S. 964, reinstated on remand, 924 F.2d 36
2nd Cir. 1991) (where a confirmed plan was premised on the assumption that the debtor's assets
would be adequately insured post-emergence, the Second Circuit found that the matter of post-
consummation refusal of coverage by the insurer was a core matter, despite the insurer's assertion
of lack of subject matter jurisdiction);  Resolution Trust Corp. v. Best Prods. Co. (In re Best
Prods. Co.), 68 F.3d 26 (2d Cir. 1995) (As part of the plan, the bankruptcy court (Brozman, J.)
enforced a subordination agreement between two creditors; one of the creditors objected to the
plan confirmation and asserted that bankruptcy court lacked subject matter jurisdiction to
adjudicate a contractual dispute between two non-debtors.  The Plan was affirmed and
substantially consummated.  On appeal of the confirmation order, first the District Court, and
then the Second Circuit affirmed the bankruptcy court's finding of jurisdiction, stating that the
subordination agreement was an essential element of the plan and thus its enforcement was a core
matter).

jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization").

27.      Even most of the cases that Megacable has cited in this respect support the Court's jurisdiction here.  Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 7 F.3d 32, 34 (2d Cir. 1993) stands for the proposition that "[a] bankruptcy court retains post-confirmation jurisdiction in a chapter 11 proceeding only to the extent provided in the plan of reorganization." The Plan and the Confirmation Order clearly provide that this Court has retained jurisdiction to deal with the Confirmation Order Motion.  Article XII.D of the Plan provides that this Court has jurisdiction, among other things, to "[e]nter such orders as may be necessary or appropriate to . . . implement . . . the provisions of the Plan and . . . the Confirmation Order."  Article XII.L of the Plan further provides that the Court has retained jurisdiction to "[h]ear and determine any matters arising in connection with or relating to the Plan . . . [and] the Confirmation Order."  Accordingly, this Court has specifically retained jurisdiction to grant the relief requested in the Confirmation Order Motion.

28.      In Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.), 372 F.3d 154, 166-67 (3$^{d}$ Cir. 2004), the Third Circuit has stated that, to determine whether post-confirmation jurisdiction exists, the "essential inquiry" is whether "there is a close nexus to the bankruptcy plan . . . sufficient to uphold bankruptcy court jurisdiction over the matter."  It goes on to state that post-confirmation jurisdiction exists when the movant is seeking to "carry out the intent of the reorganization plan, " and "the integrity of the bankruptcy process" is implicated because one party's actions threaten the implementation on such intent.  Id.

29.    This is precisely what is at issue here.  The Disclosure Statement, which provided the basis on which RCN's creditors voted on the Plan, clearly contemplated that RCN will retain the value of the Megacable Interests, and that such value will inure to the benefit of the general unsecured creditors of RCN who became the reorganized company's shareholders.  Accordingly, the relief sought in the Confirmation Order Motion goes to the heart of "carrying out the intent" of the Plan and of delivering on the expectations that underlie the creditors' vote to approve the Plan and their assessment of the value of the distributions received by them under the Plan.

C.   The Court Has Subject Matter Jurisdiction Regardless of Substantial
      Consummation of the Plan

30.    Megacable has also asserted that section 1127(b) precludes RCN from seeking relief under Fed.R.Civ.Pro. 60(b) ("Rule 60(b)") with respect to a substantially consummated Plan, regardless of whether such relief is couched as a clarification of the Confirmation Order.[5] This assertion is also wrong.[6]  Indeed, on their face, the statute applies to plans and the rule, to orders.  RCN does not seek revisions to the plan *per se*; one potential form of relief would be a clarifying amendment to the

---

[5] Megacable has also questioned RCN's request to clarify the Confirmation Order, stating that there is no ambiguity in the Confirmation Order that requires clarification.  Such contention is baseless: a court can clarify the **impact** of its order as legitimately as it can clarify any semantic ambiguity in such order.  See, e.g., In re Sterling Optical Corp., 302 B.R. 792, 807 (Bankr. S.D.N.Y. 2003); In re Kewanee Boiler Corp., 270 B.R. 912, 921-22 (Bankr. N.D. Ill. 2002).

[6] The Plan and the Confirmation Order also specified that the Court retained jurisdiction to determine all objections to claims and all issues relating to executory contracts and unexpired leases.  See Article XII.A, B, C, E.  And, in fact, this Court entered the latest order resolving a disputed claim as late as November 30, 2005 (Docket No. 661), and the latest order adding an executory contract inadvertently omitted from Exhibit D to the Plan, as late as June 21, 2005 (Docket No. 638), i.e. in each case, long after all the events cited by Megacable as evidence of the Plan's substantial consummation have occurred.  Clearly, the Court had jurisdiction to enter the requested order.

12

Confirmation Order, stating that no right or obligation of RCN, if any, is affected by confirmation and discharge.

31.    Megacable has cited four cases in support of this assertion: Holstein v. Brill, 987 F.2d 1268 (7th Cir. 1993); In re Rickel & Assocs., Inc., 260 B.R. 673 (Bankr. S.D.N.Y. 2001) (Bernstein, J.); In re Planet Hollywood Int'l, 274 B.R. 391 (Bankr. D. Del. 2001); and In re Diamond Mortgage Corp. of Ill., 105 B.R. 876 (Bankr. N.D. Ill. 1989).  These cases are easily distinguishable and many actually support RCN's position.[7]

32.    Planet Hollywood is not even a Rule 60(b) case, but rather a case where a creditor sought reconsideration of the amount of its allowed claim under Fed.R.Civ.Pro. 59 (made applicable to bankruptcy cases by Bankruptcy Rule 9023), and the debtor objected on the grounds that such reconsideration would amount to an impermissible plan modification since  such modification would have rendered the plan unconfirmable.  Such considerations are not germane to this dispute.

33.    Both Holstein and Rickel involved motions that sought actual substantive modifications of substantially consummated plans which would have made such plans different from the plans the creditors had voted on (in Holstein, substantially increasing a claim of an insider, and in Rickel, providing for distribution to equity not previously envisioned).  This is the opposite of what RCN is seeking in the Confirmation Order Motion: instead of modifying a substantially consummated plan to change it from the plan that the creditors had voted on and received distributions under, RCN is seeking a clarification from the Court that the Plan RCN's creditors voted for and the distributions they had received thereunder are, in fact, the same Plan and the same

---

[7] Diamond Mortgage is simply not apposite: it involved revocation of confirmation under section 1144 of the Bankruptcy Code.

distributions that they had been promised in the Disclosure Statement.[8]  Since the

Confirmation Order Motion does not raise the specter of changing the distributive

elements of the Plan, the concern and logic of <u>Rickel</u> are not pertinent.

34.    To the extent that <u>Rickel</u> may be read as having precedential value

outside of its factual context, it is incorrectly decided.  To accept the reading of section

1127(b) proposed by Megacble would make this section superfluous, which is never the

preferable reading of a statute.  <u>See, e.g.</u>, <u>Pennsylvania Dep't of Pub.Welfare v.

Davenport</u>, 495 U.S. 552, 562 (1990); <u>California Pub. Employees' Ret. Sys. v.

WorldCom, Inc.</u>, 368 F.3d 86, 106 (2d Cir. 2004), <u>cert. denied</u>, 125 S.Ct. 862 (2005)..

35.    Section 1127(b) of the Bankruptcy Code states that the plan

proponent may modify a chapter 11 plan "at any time after confirmation of such plan and

before substantial consummation of such plan."  11 U.S.C. § 1127(b).  But a plan

proponent already has the right to seek relief under Rule 60(b), applicable to all final

court orders and judgments.  The only reading that would make section 1127(b)

meaningful, rather than mere surplusage, would be as follows: prior to substantial

consummation, a plan proponent has an absolute right to modify a plan for any reason (as

long as the plan, as modified, does not violate sections 1122 and 1123 of the Bankruptcy

Code), while after substantial consummation, a plan proponent should be able to modify

its plan only in compliance with much stricter criteria of Rule 60(b). [9]

---

[8] Now that it has been acknowledged that the Assumption never existed, and there is no executory
contract for RCN to assume, RCN may not even need relief under Rule 60(b), a mere clarification
of the Confirmation Order, rather than its modification, may suffice.

[9] In addition, Bankruptcy Rule 9024 states that Rule 60(b) applies to bankruptcy cases, except
that a complaint to revoke confirmation must be filed within the limitation allowed by section
1144 of the Bankruptcy Code.  There are similar limitations through references to sections 1230
and 1330 of the Bankruptcy Code.  Clearly, if the drafters wished to further limit the application
of Rule 60(b) in bankruptcy cases through section 1127(b) of the Bankruptcy Code, they knew
how to do so explicitly.

36.       Therefore, it is not surprising that courts in this district have read section 1127(b) to allow modifications of confirmation orders regardless of whether the plan in question was substantially consummated.  In particular, In re 401 East 89th St. Owners, Inc., 223 B.R. 75 (Bankr. S.D.N.Y. 1998) (Brozman, J.) is analogous to the case at bar.  There, a creditor sought to be relieved from the effect of a confirmation order due to lack of proper notice.  Judge Brozman ruled that Rule 60(b) was available for modifications of a confirmation order where "the harm to the movant from denial of its motion outweighs the need for sanctity of the Confirmation Order . . . [and] the relief sought . . . will not . . . threaten its finality but only nullify its effect [on a particular creditor]."  223 B.R. at 82.  Although there was no discussion in 401 East 89th Street of whether the plan at issue had been substantially consummated, several of the cases cited by the court in support of its decision dealt with substantially consummated plans.  See, e.g., In re Boroff, 189 B.R. 53, 55 (D. Vt. 1995) (only "material" modifications of substantially consummated plans are prohibited);  Carter v. Peoples Bank & Trust Co. (In re BNW, Inc.), 201 B.R. 838, 846 (Bankr. S.D. Ala. 1996) (although the court refused to modify a substantially consummates plan under Rule 60(b), it did not question the applicability of Rule 60(b) to a consummated plan, but rather based its ruling on the fact that the adversary proceeding at issue was untimely under such Rule, i.e. filed later than one year after confirmation).

37.       Similarly, in In re Bd. of Dir. of Hopewell Int'l Ins., Ltd., 281 B.R. 200 (Bankr. S.D.N.Y. 2002), a section 304 ancillary case, a creditor challenged the permanent injunction issued in connection with a substantially consummated foreign scheme arrangement.  Judge Gropper, while denying the motion, stated that Rule 60(b) was applicable and, noting that Rule 60(b) was a "grand reservoir of equitable power,"

cited cases decided under Rule 60(b) in the context of consummated plans.  281 B.R. at

207, n.5.[10]

38.      In fact, the Seventh Circuit has acknowledged in <u>Holstein</u> that

modifications of a consummated plan are not *per se* prohibited, although they are "rare."

987 B.R. at 1270.  The court of appeals went on to explain why post-consummation

amendments should be the exception: they may (a) "throw monkey wrenches into the

proceedings," (b) make a consummated plan retroactively infeasible, or (c) alter

distributions that creditors had voted for.  <u>Id</u>.  Absent these disabling concerns, Rule

60(b) applies and may be used to amend plans.  In this case, none of these concerns is

present: rather than changing anything in the confirmed Plan, RCN seeks a clarification

that the expectations that underlie the creditors' votes on the Plan were, in fact, accurate.

D.  <u>The Court' Subject Matter Jurisdiction is Not Preempted by Federal Arbitration
Act</u>

39.      Finally, Megacable has asserted that this Court cannot exercise

jurisdiction over the Confirmation Order Motion because such exercise would contravene

the Federal Arbitration Act that provides, in relevant part, that a controversy "arising out

of a contract" or "the refusal to perform under the contract" that contains an enforceable

arbitration clause must be submitted to arbitration.  Megacable asserts that, because (a)

all Megacable Agreements contain arbitration clauses and (b) there is a pending

Arbitration, this Court cannot or should not exercise jurisdiction.  RCN respectfully

disagrees.

---

[10] The only district level case in the Southern District of New York that is relevant, <u>1115 Third
Ave. Rest. Corp. v. N.Y. Life Ins. Co. (In re 1115 Third Ave. Rest. Corp.)</u>, 185 B.R. 12
(S.D.N.Y. 1995), affirmed Judge Schwartzberg's denial of the debtor's motion under Rule 60(b)
to modify the confirmation order (entered four months prior to the filing of the motion) on the
grounds that the debtor failed to meet its burden to meet the requirements of Rule 60(b), without
discussing whether the plan was substantially consummated or not: the obvious inference being
that the District Court did not consider this a relevant determination.

40.    First, RCN is not a signatory to any of the Megacable Agreements and not even facially bound by the arbitration provisions.  C-TEC was a party to the Guaranty Agreement, and RCN International is a party to the other of the To the extent that <u>Rickel</u> contains any categorical prohibition on the applicability of Rule 60(b) to substantively consummated plans pursuant to section 1127(b) of the Bankruptcy Code, <u>Rickel</u> is incorrectly decided.  To accept this reading of section 1127(b) would make this section superfluous, which is never the preferable reading of a statute.  <u>See, e.g.</u>, <u>Pennsylvania Dept. of Public Welfare v. Davenport</u>, 495 U.S. 552, 562 (1990); <u>California Public Employees' Retirement System v. Worldcom, Inc.</u>, 368 F.3d 86, 106 (2nd Cir. 2004).Megacable Agreements.  RCN International is not requesting the relief in the Confirmation Order Motion, and RCN is not asking this Court to adjudicate the rights of RCN International under the agreements at issue in Arbitration.

41.    Second, even were RCN a party to the arbitration agreement, the Confirmation Order Motion simply does not involve a controversy "arising under" the Guaranty Agreement (or any other Megacable Agreement), and most certainly does not involve any "refusal to perform" under the Guaranty Agreement or any other Megacable Agreement.  The relevant inquiry is whether RCN is seeking an interpretation of (a) the terms of the Guaranty Agreement or (b) the parties' rights and obligations thereunder.  <u>See, e.g.</u>, <u>Collins v. Aikman Prods. Co. v. Bldg. Sys., Inc.</u>, 58 F.3d 16, 23 (2d Cir. 1995); <u>Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'hip)</u>, 277 B.R. 181, 200 (Bankr. S.D.N.Y. 2002).  RCN is seeking neither.  All that the Confirmation Order Motion is seeking is a clarification of the Court's own order, something that does not involve either the terms of the Guaranty Agreement or RCN's performance or non-performance thereunder, but involves solely the events that occurred in this Court and that are wholly

17

independent of the terms of the Guaranty Agreement or the parties' performance or non-performance under its terms.   The Confirmation Order Motion is clearly not within the scope of the arbitration provision of the Guaranty Agreement and thus is not preempted by the Federal Arbitration Act.  Indeed, the only "contract" that RCN arguably seeks to interpret is the Plan – a contract between the Debtors and their creditors at large.  See, e.g., In re Victory Markets, Inc., 221 B.R. 298, 303 (2nd Cir. 1998).

42.    Even if the Court decides that the issue raised in the Confirmation Order Motion (i.e. whether Megacable's rights under the Guaranty Agreement to which none of the Debtors was a party were discharged in RCN's bankruptcy case) is within the arbitration clause of the Guaranty Agreement, the Court should still exercise its discretion to decide the Confirmation Order Motion.[11]  This is particularly so when, as here, the counterparty seeks to misconstrue this Court's actions in order to obtain a windfall at the expense of RCN's creditors.  Equity strongly militates in favor of this Court's retaining jurisdiction.

43.    It is established law that, with respect to core proceedings, the degree of bankruptcy court's discretion regarding whether it should rule on such a proceeding or defer to an arbitration tribunal depends on whether the source of the proceeding's "coreness" is substantive or merely procedural.  Proceedings that are merely procedurally core rarely conflict with the policies of the Bankruptcy Code, and thus may be appropriate for the court's abstention or deferral to arbitration.  See, e.g., In re U.S. Lines, Inc., 197 F.3d 631, 638-39 (2d Cir. 1999).  However, when proceedings are core

---

[11] Megacable cites several cases for the proposition that, given federal policy favoring arbitration, where non-core matters are involved, bankruptcy courts should not have the discretion to rule on issue that properly belong in arbitration, based on the parties' prior agreement memorialized in the arbitration clause.  Since, as set forth in detail above, the Confirmation Order Motion is, indeed, a core proceeding, none of these cases are apposite.

18

for substantive reasons, i.e. they, as here, "involve rights created under the Bankruptcy Code" or "directly affect a core bankruptcy function," "even if they are covered by the arbitration clause, it is . . . likely that arbitration will conflict with the policy of the Bankruptcy Code that created the right in dispute.  The bankruptcy court enjoys much greater discretion" to choose to exercise jurisdiction over such proceedings.  Hagerstown Fiber, 277 B.R. at 203.  See also Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.), 118 F.3d 1056, 1066 (5th Cir. 1997).

44.    In In re U.S. Lines, Inc., 197 F.3d 631, 639-41 (2d. Cir. 1999), the Second Circuit has stated that "[l]ike any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command" and a conflict between the Bankruptcy Code and statutes favoring arbitration may be sufficient to "override by implication the presumption in favor of arbitration").  See also Vesta Fire Ins. Corp. v. New Cap Reinsurance Corp., 244 B.R. 209, 216 (S.D.N.Y. 2000) (Bankruptcy Code often "carries the day" in a dispute involving the Bankruptcy Code and the Federal Arbitration Act , "even where international arbitration agreements are compromised"), aff'd, 238 F.3d 186 (2d Cir. 2001).

45.    In this instance, where at issue is the effect of the Court's own prior order, and the determination that is sought is whether a certain claim or a set of rights have been discharged by an act of this Court, it is obvious that a substantively core issue is at stake, and that no tribunal is better suited to resolve it that this Court.  Clearly, this is not the case where a discretionary abstention would be appropriate.

46.     Based on all of the foregoing, RCN respectfully submits that

nothing prevents this Court from exercising subject matter jurisdiction over the

Confirmation Order Motion.

Dated:  New York, New York
         December 15, 2005

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY** LLP

By:/s/  Dennis F. Dunne____
Dennis F. Dunne (DD 7543)
Susheel Kirpalani (SK 8926)
Lena Mandel (LM 3769)
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000

Attorneys for RCN Corporation,
et al., Reorganized Debtors